## THE J. D. PETERS.

## MAZEAS et al. v. THE J. D. PETERS et al.

### (District Court, N. D. California. April 5, 1890.)

COLLISION—BETWEEN STEAM AND SAIL—EVIDENCE.

A steamer and sloop were approaching nearly end on; the former going 10 miles an hour, the latter 6. The master and watchman of the steamer testified that the sloop was first seen 3 miles distant, and 1 point on their starboard bow, both lights being visible; that the steamer kept her course for 2 or 3 minutes, when the sloop's red light disappearing, they altered their course one-half point to port, exposing their green light, and kept this course for a few minutes, when the sloop, being about 100 yards away, changed her course, and came up into the wind, exposing her red light; that the steamer stopped and backed, but was struck on her starboard bow by the sloop's port. The three persons on the sloop denied having changed their course. *Held*, that the steamer had not sustained the burden on her to show that the collision was not her fault.

In Admiralty.

Suit in admiralty by J. Mazeas and others against the steam-boat J. D. Peters and the California Navigation & Improvement Company.

*D. T. Sullivan*, for libelants.

*Pillsbury & Blanding*, for claimants.

HOFFMAN, J. On the morning of November 17, 1889, a collision occurred between the sloop Solferino, of the burden of 19.66 tons, and the steam-boat J. D. Peters. The course of the sloop was W. N. W.; that of the steamer, about E. S. E. The vessels were thus approaching each other nearly end on. Each vessel discovered the other at a distance of two and a half or three miles. The sloop was, as stated by the master of the steam-boat, one point on his starboard bow, three miles off. It is obvious that the collision was caused by gross negligence or mismanagement on the part of one or both of the vessels. In all cases of collision between steamers and sailing vessels, the former are presumptively in fault; for it is the right of the sailing vessel to keep her course, and the "duty of the steamer to adopt such precautions as will avoid her." *St. John* v. *Paine*, 10 How. 557; *The Oregon* v. *Rocca*, 18 How. 572. In *Leavitt* v. *Jewett*, 11 Blatchf. 421, Judge WOODRUFF, affirming the decision of BLATCHFORD, J., observes:

"It was the duty of the steamer to keep out of the way of the sailing vessel, which was seen by her, or ought to have been seen by her, at a sufficient distance, and where the room was abundant for any movement which the steamer desired to make for the purpose. She did not avoid the schooner. For the collision which ensued, she is presumptively responsible. The burden of excusing the collision rests upon her. She has attempted such excuse by imputing to the schooner a change of course defeating her own measures, claimed to have been properly taken. Such change of course is denied by the witnesses from the schooner. * * * It is not enough that the steamer has created a doubt upon this sole ground of defense. * * * I am constrained to hold that the defense is not satisfactorily established."

In the language of the cases cited from the supreme court, the defense must be almost conclusively established.

The account given by the master and the watchman of the steamer is substantially as follows: The sloop was first discerned by the steamer one point on her starboard bow, and distant three miles. The speed of the steamer was about 10 miles per hour. That of the sloop, sailing free, with a strong flood-tide in her favor, was about six miles, probably more. The vessels were thus approaching each other at the rate of something more than a mile in four minutes, as they were sailing nearly end on. At first, when the vessels were about three miles apart, both lights of the sloop were visible. The steamer continued on her course some two or three minutes, when the sloop's red or port light disappeared, leaving only her green light in view. The vessels must then have diminished the distance between them one-half or three-fourths of a mile, leaving them more than two miles apart. Upon the disappearance of the red light, the steamer altered her course about one-half a point to port, exposing her green light to the sloop's green light. The steamer kept on this course, or edging more to port, "for a few minutes;" and "the first thing the captain knew" was that the sloop came right up into the wind, exposing her red light. The steamer instantly stopped and backed, but too late to avoid the collision. The sloop struck the steamer's starboard bow with her own port bow a few feet from her stern. When the sloop made this change of course, she was distant from the steamer, according to the watchman, 100 yards, and according to the captain, 250 or 300 feet. If the sloop had not changed her course, the vessels would, as these witnesses assert, have passed each other, starboard to starboard, at a distance, as the watchman says, of not less than 100 feet. With regard to this account of or excuse for the collision, which the court is asked to accept as satisfactory, it is to be observed: (1) That, by the captain's own showing, the vessels must have been at least a mile apart when the sloop showed her green light. The steamer promptly altered her course to port, thus exposing her own green light. The vessels were thus a mile or more distant from each other, sailing on divergent, or at least parallel, courses. If they continued on these courses "some minutes," I find it difficult to understand how, when the sloop came into the wind, she could have been within 100 yards or 250 or 300 feet of the steamer. Still less how, if she had not come into the wind, the vessels could have passed within 100 feet of each other. (2) To enable her to strike the steamer's starboard bow with her own port bow, as stated, she must, within 100 yards, have made a change in her course of, at the very least, eight points, which seems highly improbable, especially as she was running before the wind, with her main-sheet free, and would have lost the wind, and been obliged to cross the strong flood-tide before getting around far enough to present her port bow to the starboard bow of the steamer. (3) The maneuver attributed to the sloop was not an ordinary fault of seamanship. It betrays gross incompetency, or else bewilderment and total loss of presence of mind. There is no evidence to show that the persons in charge of the sloop were not reasonably competent to navigate their little craft. If they were panic-stricken, and lost their heads, it could only have been through fear of a

catastrophe they considered imminent. If so, the steamer had no right to expose her to such real or apparent danger; and it is almost inconceivable that they could have entertained such apprehensions if the vessels had for "some minutes," and for at least a mile, been sailing, starboard to starboard, on divergent or parallel courses. The nature and extent of the damage sustained by the sloop, and the fact that the steamer was uninjured, seem to show that the sloop was struck by the steamer, and not the steamer by the sloop, as asserted by the claimant's witnesses; and, further, the fact that far more injury was inflicted than could be caused by the impact of two vessels, one of which, by stopping and backing, had lost her headway, while the sails of the other were shivering in the wind, lends additional improbability to the account of the accident given by claimant's witnesses. With regard to the testimony on the part of the libelants, it is enough to say that all of the three persons on board the sloop positively deny having changed her course, or having seen the green light of the steamer until the moment of the collision.

The excuse set up for the steamer in this case is not unfamiliar to the supreme court. In *Haney* v. *Packet Co.*, 23 How. 291, Mr. Justice GRIER observes:

"But it [the answer] alleges as an excuse that, while the steam-boat and schooner were meeting on parallel lines, the schooner suddenly changed her course, and ran under the bows of the steamer. This is the stereotyped excuse usually resorted to for the purpose of justifying a careless collision. It is always improbable, and generally false."

In the case at bar, it would not be difficult to suggest an explanation of the collision much more probable than that offered by the claimants. But it is unnecessary. It is enough that the claimants are presumptively liable for the accident, and that the burden of proof is on them to show to the satisfaction of the court that the steamer was not in fault. This they have failed to do. Decree for libelants.